**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ericsson, Inc., | ) No. CV '03-00375-PHX-JAT |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Continental Promotion Group, Inc., | ) |
| Defendant | ) |

Pending before the Court is Defendant's Motion for New Trial and/or to Alter or Amend Judgment (Doc. #96). The Court now rules on the Motion.

**I.    BACKGROUND**

Ericsson, Inc. ("Ericsson") manufactures cellular phones. Continental Promotions Group ("CPG") assists product manufacturers in developing and administering rebate and other promotional offers to its customers. Among other services, CPG processes rebate submissions and provides customer support. Ericsson contracted with CPG to administer cellular phone rebate programs, including the "Watch and Win," "Merry Mobile," and "New Years Resolution Solution" programs. Only one rebate was permitted per qualified telephone. Pursuant to the agreement between Ericsson and CPG, CPG was to process rebate application forms and use reasonable efforts to ensure that only customers submitting forms for qualified purchases received the rebate. In determining whether the purchase qualified for the rebate, CPG agreed to check for duplicate submissions based upon the name, address,

and/or Electronic Serial Number ("ESN") of the phone. CPG also agreed to check whether the ESN submitted by the consumer fell within the range of ESNs provided by Ericsson. If it did, and other criteria were met, CPG further agreed to send an electronic file of the consumer's ESN data to AT&T Wireless ("AT&T") to determine whether the consumer had activated phone service within the applicable time period. Only customers who activated service with AT&T were eligible for the rebate. If AT&T validated such service, then CPG would agree to mail the consumer a rebate check.

In its complaint, Ericsson alleged that CPG breached its contractual obligations with respect to the rebate promotions by (a) paying multiple or duplicate rebates on phone purchases involving the same ESN, (b) paying rebates on phone purchases for which the recorded ESN was not within the approved range of ESNs, (c) paying rebates on phone purchases for which either zeros or no ESN was recorded, and (d) paying rebates without first confirming whether phone service had been activated with AT&T. CPG moved for partial summary judgment, and Ericsson moved for summary judgment.

The Court granted summary judgment for Ericsson finding that CPG breached the contract with Ericsson and that damages were owed. CPG now moves (1) for a new trial of the claims resolved in favor of Ericsson Inc. by the Court's Order of February 25, 2005 and its Judgment entered in favor of Ericsson on February 2, 2006, and/or (2) to alter or amend that Judgment, pursuant to Rules 59(a) and 59(e) of the Federal Rules of Civil Procedure. In support of its motion, CPG argues that this Court erred in finding that: (a) Ericsson satisfactorily proved damages, (b) the testimony of CPG's executives was inadmissible, and (c) the evidence concerning rebates paid without AT&T's verification was not in dispute. CPG further provides that it has new evidence to support its defense that its employees copied and pasted ESNs into the database.

**II.    LEGAL ANALYSIS**

Because this case has not been tried, but rather resolved by a grant of summary judgment, CPG cannot obtain the relief of a new trial under Rule 59(a) of the Federal Rules

of Civil Procedure.[1] Instead, Rule 59(e) is the proper mechanism for challenging the grant of summary judgment. Under Rule 59(e), there are three grounds upon which a motion to alter or amend a summary judgment order may be granted: (1) newly discovered evidence, (2) clear judicial error, and (3) an intervening change in controlling law. *School Dist. No. 1J, Multnomah County v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). CPG does not contend that there is an intervening change in controlling law; thus, only the first two grounds are at issue in this case.

**A. Newly Discovered Evidence**

CPG has attached to its moving papers an affidavit executed by Guadalupe Orona, a CPG data entry employee identified as entering duplicate ESNs for the rebate promotions. This new evidence is proffered to support CPG's claim that its employees copied and pasted ESNs into the database. In order for the Court to amend a judgment based on Ms. Orona's affidavit, CPG must prove that:

> (1) the evidence was discovered after judgment, (2) the evidence could not have been discovered earlier through due diligence, and (3) the newly discovered evidence is of such a magnitude that had the court known of it earlier, the outcome would have likely been different.

*Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992-93 (9th Cir. 2001) (quoting *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000)). All three requirements must be met in order for the Court to amend a judgment. *See Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir. 2003). CPG has failed to satisfy these three requirements.

First, CPG has failed to prove that the evidence set forth in Ms. Orona's affidavit was discovered after judgment. CPG's motion fails to state two important facts: (1) whether this was the first time that it spoke with Ms. Orona, and (2) whether this was the first time that Ms. Orona provided the information at issue. Furthermore, the motion fails to allege any

---

[1] The language of Rule 59(a) expressly limits its application to tried cases and is not applicable to matters resolved via summary judgment. Fed. R. Civ. Pro 59(a). Additionally, the Ninth Circuit Court of Appeals has held that the district court should treat motions seeking reconsideration of summary judgment as Rule 59(e) motions. *See Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 811 (9th Cir. 1981).

- 3 -

1  facts relating to the date on which CPG discovered this evidence. Thus, CPG has failed to
2  prove that the new evidence was in fact discovered after judgment.
3        Second, CPG has failed to prove that the evidence could not have been discovered
4  earlier through due diligence. During the Rule 30(b)(6) deposition of CPG on June 14, 2004,
5  Mr. Jarrad, CPG's Senior Director of Accounting Services, testified that Ms. Orona was one
6  of the data entry operators who entered duplicate ESNs. Thus, one month prior to the filing
7  of CPG's summary judgment papers, CPG knew the identity of an employee who allegedly
8  copied and pasted ESNs into the database. CPG did not explain why it failed to obtain Ms.
9  Orona's affidavit prior to filing summary judgment papers. Additionally, it made no effort
10 to argue that it could not have obtained Ms. Orona's affidavit earlier through due diligence.
11 Thus, CPG has failed to prove the second requirement.
12       Finally, Ms. Orona's affidavit does not provide evidence of such a magnitude that the
13 outcome would have likely been different had the court known of the evidence earlier. Ms.
14 Orona's affidavit states that she used the copy and paste feature "many times" on one of the
15 three promotions at issue. Her affidavit is very limited in scope and only suggests that one
16 data entry worker used the copy and paste feature on one of the promotions. Even if the
17 affidavit is admissible and eligible for consideration by a jury, CPG has not shown that the
18 outcome will likely be any different. A reasonable jury will still be unable to return a verdict
19 for CPG as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)
20 (explaining that summary judgment is proper when the evidence is such that a reasonable
21 jury is unable to return a verdict for the nonmoving party). Thus, the final requirement is not
22 satisfied and amendment of the judgment on the ground of newly discovered evidence is not
23 warranted.
24     **B. Clear Judicial Error**
25       CPG makes several arguments in support of its position that the Court committed clear
26 judicial error in granting summary judgment. First, CPG argues that this Court erred in
27 finding that Ericsson satisfactorily proved damages. Ericsson, however, presented sufficient
28 evidence of damages using CPG's own database. CPG's database showed that the same ESN

- 4 -

1 was entered multiple times, thus causing the same customer to receive more than one rebate.

2 Second, CPG argues that even if Ericsson presented evidence proving damages, the testimony of Ericsson's Project Manager, Scott Flanagan, undermined Ericsson's proof. However, the testimony of Mr. Flanagan does not negate Ericsson's proof of damages. Mr. Flanagan only testified that, assuming the underlying phone purchase otherwise qualified for the rebate, the duplicate recording of an ESN would not necessarily damage Ericsson when CPG paid the corresponding rebate. This testimony is insufficient to create a genuine issue of material fact as to whether Ericsson suffered damages because it assumes that the phone purchase did in fact qualify for the rebate.

Third, CPG argues that its "copy and paste" defense, supported both by affidavit and by deposition testimony, disproved that multiple rebates were paid. To be cognizable on summary judgment, however, the evidence that CPG presented must be competent. *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028 (9th Cir. 2001). To be competent, a witness' testimony must be based on personal knowledge. *Id.*; *see also* Fed.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). CPG did not offer the testimony of any witness with personal knowledge that the copying and pasting actually occurred. Instead, CPG offered the testimony of several of its executives who reviewed its database and concluded, in their opinion, that copying and pasting must have occurred.

CPG states that its executives, who were considered 30(b)(6) witnesses, did not need to have personal knowledge when testifying on behalf of CPG, citing *PPM Finance, Inc. v. Norandal USA, Inc.* However, *PPM Finance* is only applicable to 30(b)(6) witnesses who have been prepared by the corporation to testify as to the knowledge of the corporation. *PPM Finance, Inc. v. Norandal USA, Inc.,* 297 F. Supp. 2d 1072, 1085-86 (N.D. Ill. 2004) (citing *Calzaturficio v. Fabianoi Shoe Co., Inc.*, 201 F.R.D. 33, 37 (D. Mass. 2001)). *PPM Finance* states that a 30(b)(6) witness does not need to have personal knowledge because he testifies as to the corporation's position on a matter, not his personal opinion. *Id.* Thus, it follows that

- 5 -

1  if CPG's executives testified that the copying and pasting of ESNs was a standard practice
2  of the corporation, then the executives would not need personal knowledge to testify that
3  employees actually engaged in this practice. However, because CPG's executives were not
4  prepared by CPG to testify as to corporate knowledge, but instead simply stated their
5  personal opinions based on a review of CPG's database, personal knowledge was still
6  necessary in order for the testimony to be admissible.

7  Fourth, CPG argues that corporate officials are competent to testify by affidavit in the
8  context of a Rule 56 motion about corporate and industry practices based upon their positions
9  and experience with the corporation. However, this argument is not applicable to the
10 testimony of CPG's executives. Again, CPG's executives were not testifying about CPG's
11 practices but instead were stating their personal opinions as to whether they thought that
12 copying and pasting had occurred. This argument is unavailing.

13 Fifth, CPG argues that the testimony of its executives was admissible under Rule 701
14 of the Federal Rules of Evidence. Under Rule 701, however, lay witnesses must have
15 personal knowledge in order for their testimony to be competent and admissible. *See U.S. v.*
16 *Begay*, 42 F.3d 486, 503 (9th Cir. 1994). CPG's executives did not have personal knowledge
17 that their employees actually copied and pasted ESNs into the database. Therefore, CPG's
18 argument concerning Rule 701 also proves unavailing.

19 Finally, CPG argues that this Court erred in granting summary judgment because the
20 evidence concerning AT&T's verification of phone service was plainly in dispute. CPG
21 states that all of the rebates paid without AT&T verification of service activation were
22 authorized and approved by Ericsson through CPG's customer service process. Ericsson has
23 stated that such approval was done occasionally; however, such approval was done in
24 writing. CPG can only produce a "sampling" of e-mails showing Ericsson's approval. CPG
25 contends that these authorization e-mails prove a habit or routine business practice of
26 obtaining authorization from Ericsson prior to granting a rebate. CPG states that its routine
27 business practice is relevant to prove that its employees' conduct during the time period at
28 issue was in conformity with its routine practice. Thus, it argues that it obtained

1 authorization from Ericsson to grant all of the rebates paid through its customer service
2 process, as evidenced by its routine business practice.

3   This argument is unsuccessful, however, because CPG has failed to prove that it had
4 a routine business practice of obtaining Ericsson's authorization prior to granting a rebate.
5 Conduct is not a habit unless it is frequently engaged in. *Mathes v. The Clipper Fleet*, 774
6 F.2d 980, 984 (9th Cir. 1985). The "sampling" of e-mails does not provide sufficient
7 evidence to prove that CPG had a routine business practice of contacting Ericsson. Because
8 a routine business practice is not proven, there is not sufficient evidence to prove that CPG
9 was authorized by Ericsson to grant the rebate requests without AT&T's verification of
10 activated service.

11 **III. CONCLUSION**

12   CPG has failed to prove that it either acquired newly discovered evidence or that clear
13 judicial error was committed. This Court cannot grant the Motion to Alter or Amend the
14 Judgment under Rule 59(e).

15   Accordingly,

16   **IT IS ORDERED** that Defendant's Motion for New Trial and/or to Alter or Amend
17 Judgment (Doc. #96) is **DENIED**.

18   DATED this 27th day of June, 2006.

James A. Teilborg
United States District Judge

- 7 -